FONG KEE *vs.* C. B. WILSON, Marshal of the Kingdom.

MANDAMUS.

HEARING, JULY 12, 1892. DECISION, JULY 13, 1892.

JUDD, C.J., BICKERTON AND DOLE, JJ.

The Acts to regulate Chinese immigration, which prohibit the entry into this Kingdom of Chinese without permits, do not except such Chinese when within the territorial jurisdiction of this Kingdom from the authority of its laws and the processes of its courts.

WRIT.

Whereas a petition for a writ of mandamus has been filed by Fong Kee in our Supreme Court, alleging :

1. That a Chinese person by the name of Lau Cheu (Low Chow), a resident of Honolulu and doing business as a shoemaker, is indebted to said petitioner upon a certain promissory note for eighty-five dollars, made by said Lau Cheu at Honolulu upon the first day of January, 1892;

2. That said petitioner brought an action upon said note in the Police Court of Honolulu and, filing his bond with the summons which was duly approved, procured an order for the arrest of said Lau Cheu, the defendant, upon the allegations duly made that said defendant was or is about to quit the Kingdom;

3. That said defendant is now and at the time said suit was filed was upon the ship or vessel called the Transit, which was then and now is lying in the harbor of Honolulu and within the jurisdiction of the said Police Court, which vessel is about to depart from Honolulu for ports unknown to said petitioner;

4. That said process was placed in the hands of Charles B. Wilson, Marshal of the Kingdom, for service ; that said Wilson has refused to serve the same or to arrest said defendant, and

33

has made a return upon said process that said defendant is not within the jurisdiction of the courts of this Kingdom;

5. Said petitioner is informed that said Wilson pretends that said Lau Cheu is a Chinese person coming on said vessel from ports beyond the Hawaiian Islands and is not entitled to land in the Kingdom;

6. But said petitioner alleges that said Lau Cheu in fact is a resident of this Kingdom and was when said note was made and has ever since continued to be such resident, and left Honolulu upon the bark Sonoma as a stowaway on or about May 29th, 1892, upon his voyage to San Francisco, without procuring a passport as required by the law, and as said petitoner believes for the purpose of avoiding the payment of his debts; said petitioner further alleges upon information and belief that upon arrival in San Francisco said Lau Cheu, without landing, was transferred from said bark Sonoma to the said vessel called the Transit to be returned to Honolulu;

And praying that a writ of mandamus may issue out of this honorable Court, under the seal thereof, directed to said Marshal, ordering him forthwith to execute the process of said Police Court and to arrest and detain said Lau Cheu and to produce him before the said Police Court, there to abide such judgment as may be made in said cause:

Now therefore you are commanded forthwith to execute said warrant of arrest and to produce said Lau Cheu before said Police Court, to abide by such judgment as may be rendered against him, or show cause before the Justices of our Supreme Court, on Monday, the 11th day of July, A. D. 1892, at 9:30 o'clock A. M., why a peremptory writ of mandamus should not issue against you.

### RETURN.

And now comes C. B. Wilson, Marshal of the Kingdom, respondent in the above entitled cause, and makes return to the petition and writ, and to the matters therein contained and alleged, and shows cause thereto as follows:

1. That the matters and things set forth, alleged and stated

in the petition are insufficient in law to allow the peremptory writ to issue.

2. That the person Lau Cheu is not within the jurisdiction of the Marshal to arrest as prayed for in the petition, as appears by the petition itself.

3. And further that Lau Cheu or Low Chow is a Chinese, a native of China; that he is not a resident of this Kingdom and is not within the jurisdiction of any process of this Kingdom ; that the said Lau Cheu arrived at the port of Honolulu lately on board the vessel Transit without the permit to land required by law to be possessed by Chinese persons; that Lau Cheu is detained on board said vessel and refused permission to land in this Kingdom by the Collector-General of Customs of the Hawaiian Government, on the ground that Lau Cheu was a Chinese coming from abroad without any permit required by law for him to enter this Kingdom ; that Lau Cheu is not legally or lawfully in the Kingdom, but legally detained at the threshold of the Kingdom, and admittance to this Kingdom to him refused, and the process prayed for cannot be executed legally by the respondent, Marshal Wilson.

4. And further that respondent is informed and believes and so alleges that said Lau Cheu heretofore, within the last six months, voluntarily departed on a vessel Sonoma, from this Kingdom for foreign ports, without obtaining a permit to land or re-enter in this Kingdom and voluntarily severed his residence and connection with this Kingdom, and that he cannot now be lawfully landed from the vessel Transit.

5. And further that Lau Cheu is a Chinese within the meaning of Chapter 28 of the Session Laws of 1887, and Chapter 60 of the Session Laws of 1888, and arrived at the port of Honolulu from a foreign port, to wit, the port of San Francisco, State of California, United States of America, on board the vessel Transit, on or about July 5th, 1892. That said Lau Cheu was not upon his arrival and is not provided with any legal permit or other sufficient authority to enter this Kingdom as provided by law, and is now detained on board the Transit by and refused a landing in this Kingdom by the Collector-General of

Customs and is not lawfully within this Kingdom, so that the process prayed for by petitioner could be legally executed by respondent.

Wherefore respondent submits that the writ prayed for should not issue.

### OPINION OF THE COURT, BY JUDD, C.J.

The single question raised in this case is whether the Acts forbidding the entry of Chinese into this Kingdom without permits invalidate the laws of this Kingdom as to such persons when within its territorial limits. A person, in this case, is required by a valid writ of the Police Court of Honolulu, who is within our jurisdiction, being on board a vessel in the harbor of Honolulu, and is a Chinaman without a permit to land. We answer without hesitation that there is nothing in the Chinese Restriction Acts which excepts Chinese without permits, who are within the territory of this country, from the authority of our laws.

It would be fatal to the existence of government here to hold the contrary. These Acts were never intended by the Legislature to interrupt or interfere with the authority of the Government within its territory.

In a case decided on February 29, 1892, by the Supreme Court of the United States, *Holy Trinity Church vs. United States*, 142 U. S. Rep., 457, it was held that an Act of Congress to prohibit the importation and migration of foreigners and aliens under contract or agreement to perform labor in the United States, etc., does not apply to a contract between an alien and a religious society for his services as a minister. The Court say, " It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." " The object designed to be reached by the act must limit and control the literal import of the terms and phrases employed."

In *U. S. vs. Kirby*, 7 Wall, 482, defendants were indicted for the violation of an Act of Congress which made punishable the obstructing or retarding the passage of the mail or any carrier of the mail. The defendants pleaded that they had a warrant

to arrest the mail carrier for murder, and the Court held that the execution of the warrant was not an obstruction of the mail or the retarding of a mail carrier within the meaning of the Act. The Court said, " All laws should receive a sensible construction. General laws should be so limited in their application as not to lead to injustice, oppression or an absurd consequence. It is always to be presumed that the Legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter." The object of the Legislature, by the Acts under consideration, was to " regulate Chinese immigration," and no suggestion can be found in the first Act of 1887, or any of the subsequent Acts amendatory thereof which leads to the conclusion that these Chinese without permits, if within our territorial jurisdiction, were not subject to our laws. The penalties prescribed in these very Acts for violations of them, as for instance, for attempting to land without a valid permit, concede this. If they were subject to the operation of this law, then why not to all other laws of this Kingdom ?

The various decisions of this Court, sustaining the constitutionality of the Restriction Acts, are based upon the inherent right of every sovereign power to forbid the entrance of foreigners within its dominions, or to admit them only upon such conditions as it may see fit to prescribe. And the various writs of habeas corpus, upon which these questions have arisen, have had for their object to ascertain whether the detention on the vessel bringing these persons was lawful. The right to land or to enter this Kingdom was the only question considered, and no question as to the jurisdiction of the laws of this country over them or of the applicability of the various writs and processes of the courts to them has been raised in these cases.

We therefore find the cause shown by the return to be insufficient, and a peremtory mandate may issue.

*F. M. Hatch* and *W. R. Castle,* for petitioner.

*W. A. Whiting,* Attorney-General, and *Chas. Creighton,* Deputy Attorney-General, for respondent.